Good morning, ladies and gentlemen. Before we begin, I'd like to advise appellants, if you have reserved any time for rebuttal or wish to reserve any time, I'd appreciate your letting me know at the beginning of your arguments, and the clerk may call the first case. Case No. 14-5789 Donald Corley v. Commonwealth Industries, Incorporated, et al. Oral Argument, not associated with two minutes per side. Mr. Grabhorn for the appellant. This is a fairly thick file that the court has before it. This is our second time before the Court of Appeals. We previously came before the court to address a legal issue of whether or not, in a particular pension benefit, an early retirement benefit could be what we call grown into. Most early retirement benefits have an age requirement, they have a service requirement, and so long as an individual met the service, could they later age into the early retirement benefit, even if the plan had been amended. In 1998, thereabouts, this particular pension plan went through a significant series of amendments to convert its formula or to create a new formula, and appellants typically called a cash balance plan. Subsequent to that time, a number of retirees, including Mr. Corley, elected to retire, sought early retirement benefits, and elected to receive those benefits in a lump sum. Counsel, maybe cutting to the chase here a little bit, what is a subsidized benefit for purposes of a lump sum payout when you're, what is it, 55, early payout? I don't understand what a subsidized payment would be, and when you calculated this, you came up with not one, but several different, over the period of time, several different figures. Once it was 27,000 in addition, and sometimes it was other figures in addition, but I don't really get the concept here exactly. Okay, if I may, Your Honor, with respect to subsidized benefits in the pension context, the majority, including this pension plan, normally define a particular point in time that they calculate a benefit. The default for years has been age 65, and so let's say at age 60... The default being the period of time when you get to begin your pension. Right, and a lot of these are tied to the Internal Revenue Codes, the minimum requirements that ERISA has for a pension plan, going back when ERISA was enacted in 74 and so on. And so by way of example, if at age 65 you're entitled to $1,000 a month life annuity, whether you live a day, whether you live 15 years, 20 years or whatnot, that is the benefit that you're... $1,000, you say, annuity, $1,000 a year. Per month, we'll just use per month. Per month, okay. Either way, it doesn't really matter the frequency. Now, quite often to encourage turnover in the workplace, employers would create what we call early retirement incentives. The unions were... You're now on the subject of if you retire at age 65 in the normal course... Right. And you're going to tell me what is a subsidy. Right, and that's what I'm getting to. Okay. I'm trying to. Okay, and trying to put it as lame in terms as I can without giving the actuarial answer, which I don't think will be beneficial. Well, you don't... Maybe the actuarial answer is the answer. Well, here's the way it works. If you're going to draw the benefit prior to age 65, and let's assume at age 65 we have a life expectancy. Life expectancy, we'll just say, is 20 years. So the plan is expecting to pay $1,000 a month for 20 years, 240 payments, $240,000. If you draw that before age 65, they're not going to pay you the $1,000 a month if it's going to be equivalent, actuarial equivalent to that, because if you started at 64, well, there's 12 additional months. So there has to be an actuarial adjustment to make that whatever you receive then equal to that age 65 benefit. That requires an actuarial calculation. That costs money and time and gets fairly complex. What a lot of employers have done over time is to simplify it. They've put into place early retirement subsidies. And so by way of example, they'll have a qualification, a threshold, age and service, and this one's 55, and it'll be five years. If you meet that, you can start drawing it before age 65. How do you figure what the subsidy? I understand. The plan terms tell you exactly what it is. If you retire at 65 and you're going to get X number of dollars a month, it's going to be for your life. Right. And you can have a hypothetical determination of what that would be before you die. That is, when you become 65 actuarially by guessing how long you're going to live statistically, right? Yes. There's a mortality table the IRS prescribes that a minimum has to be used. Okay. So what you're trying to do here is to say that if you do it by a lump sum, you should get what? Okay. First of all, what we've done is, let me answer this. Early retirement, you get a lump sum. You're saying what? Well, what I'm saying is this. What we've just done is we've gone from the calculation of the benefit that's payable, whether or not it's as a normal retirement or as an early retirement. And the early retirement benefit in this case is subsidized because it is greater than the actual equivalent. It is reduced by way of example zero for the first three years. At age 62, a retiree under this plan can draw their full benefit unreduced. That's the early retirement benefit. That's the subsidy. Now when we turn to how they receive it, the form of benefit, the form of benefit is either, as we talked about a minute ago, a straight life annuity. That's typically a default. Or there are optional forms of benefits. In this case, one of the optional forms is the lump sum. The lump sum, by these plan terms, is required to be the actual equivalent of that early retirement benefit. Whatever that early retirement benefit is, it's required to be the actual equivalent of that. What you call a subsidy is simply more money. It's more valuable if you retire early and they give you better terms. Absolutely. Absolutely. It's very common in plans. Why don't you go on to your legal argument? That's fine, Your Honor. Because, again, and I think this has been partly one of the issues that you'll float through here is when we get into dealing with pensions, we get into dealing with actual calculations, they can get convoluted in a hurry. The issue is this. From a legal standpoint, the only issue, the question I have before the court today is, do the plan terms require the lump sum benefit that was payable to Mr. Corley and, for that matter, any of the other potential early retirees? Does the plan terms require that lump sum be the actual equivalent of the normal form of benefit? Can I ask one question about that? Yes, Your Honor. I understood the previous decision from this court, I wasn't on the panel, to limit to remand for a particular purpose having to do with ERISA's anti-cutback provision. Am I reading our previous decision incorrectly? I do not believe, not necessarily, Your Honor. Let me explain this. Well, if that's correct, which it seems to be, and you don't say it's incorrect, I must say I'm having trouble seeing how the argument you're making now is an appeal from a decision about whether there's been a violation of ERISA's anti-cutback provision. Okay. It seems to be a different issue. Well, the issue that was presented initially was… And I'm trying to address that first appeal, Your Honor. In the first appeal, the issue there, the threshold issue, was whether or not the ERISA regulations, the anti-cutback to a 5G and so on, precluded eliminating or preventing a retiree, such as Mr. Corley, from aging into the early retirement subsidy after the plan amendment 98. The court said that the law requires that he be allowed to age into it. What the court also recognized, though, that if we look at the paragraph above the on remand, it says, as a factual matter, however, it is not clear the plan actually reduced benefits because neither party essentially, I'm paraphrasing here, provided the court with calculations. And the reason for that is that when we first did, call it Corley 1, before the district court, we essentially bifurcated to a large degree. The only thing that was briefed and we addressed was the liability, the issue of whether or not they're entitled to the benefit in the first place. And based on that decision, if the decision was favorable for the plaintiffs, then we would go to the expense of time of hiring the actuaries and doing the calculations. We go up on appeal. On appeal, the threshold issue is whether or not Mr. Corley was entitled to the early retirement benefit. And then ultimately, as the court recognized, we don't even have the calculations here, go back and do it again. And so when I look at the first sentence of that, it says, the district court should consider whether the benefit's payable under the relevant provisions of the plan. The plan terms. Let's go back and look at those calculations, make sure they weren't reduced, and make sure they were properly payable. Arguably, a plan's failure... Make sure they weren't reduced, make sure they were properly payable. It says make sure that they're not a violation of the anti-cutback provision. Well, and the anti-cutback... Sort of adding things into what it says. I respectfully disagree, Your Honor. From the standpoint of going back and addressing whether it was a 205G or the plan terms, at the end of the day, if a plan has not paid you what you're entitled to, that is a cutback. And what's going on here as we go forward is, and if you even look at the appellee's response brief, they completely avoid any discussion... ...a remand to see whether there's a violation of the anti-cutback provision because any inaccuracy would violate the anti-cutback provision and the door is open and we'll just look at all the issues. Well, I think if I sit there and read the entire context of the order and what the decision was where they recognized, the panel recognized, that they didn't have the calculations before them, that the parties had not had an opportunity to flesh that out, that that was what we were to do on remand based on their order that Mr. Corley or any other retiree who had the age and service requirements was entitled to a general retirement benefit. Thank you. Is there an argument in your brief in the form of, and this violates the anti-cutback provision for a particular reason? No. We addressed that at the district court when he called us in to actually provide the calculations. He asked us for the calculations. The plaintiffs provided it. Mr. Corley provided it. Did we go in detail? No, we didn't need to. Why? Because we have the plan in terms. And following Amera McCutcheon and Hamishoff, the Supreme Court has been crystal clear that so long as the plan provides the minimum IRS inter-revenue code guarantees, it can provide greater benefits than the plan terms control. And so I tried to narrow the issues to just one. What do the plan terms require? But you've had several different answers to the question of what the, quote, subsidy addition would be. I mean, right? We had, yes, and part of that. You had three or four different figures that you say constitute the subsidy addition. Right. We had two different figures in particular. One dealt with if we were looking at the traditional benefit formula, and the second was whether or not we look at the amended formula, the cash balance, which requires a different type of calculation. I don't know if that answers you or not. I hope it does. That's different from the one in your brief now that you say is the difference. You say now the difference is, what, $27,000? I don't know if I actually, in the brief here before the court, put a dollar amount on that because, again, we're right back. Maybe I did. I take that back, Your Honor. We did. I think we did it on the reply brief for you. We tried to lay it out what our position is. At the end of the day, what it's going to have to do is go back and very simply is this. The threshold issue again is, is the actual requirement required for the lump sum that it be the equivalent of that normal form, that early retirement benefit? The answer to that is yes. I'm sorry, I'm out of time. Can I finish my sentence? You can finish the sentence. Otherwise, you'll be eating into your rebuttal beyond that. Go ahead. Very simply, if we go back, we can get the actual certification to satisfy the court on those issues. Thank you. Thank you. Members of the court, I'm Keith Prytel. I represent all of the appellees here before you today, the plan, the benefits committee, and the former employer of Donald Corley, Commonwealth Industries, Inc. I'd like to pick up on the thread that you identified, Judge Rogers, and that is what happened the first time around nearly two years ago when we were here at the circuit. What was the remand? What were the issues to determine on remand? Because some of the arguments being made here in the briefing and the arguments presented at oral argument here today are not only not issues that were remanded, they're diametrically opposed to positions taken for the first panel that heard this dispute. When we went up the appellate ladder the first time around, the issues were much, much broader than was the anti-cutback statute violated. They argued the plan language was violated. They argued that the application of the statute of limitations and the tolling that was applied by Judge Haber below was erroneous. So there were much, much broader issues. And with respect to, this goes into our exhaustion argument, with respect to the exhaustion argument, there was a finding that the correct statute of limitations, the Kentucky statute of limitations, was five years, that eight of the nine plaintiffs were therefore barred by virtue of application of that statute of limitations. But then Mr. Corley escaped it because even though his suit was filed five years and I think it was one month beyond the five-year statute of limitations, he was entitled to tolling while he went through the administrative process of the plan, presenting his claim, having it denied, appealing it, having that denied, and then going on. And the reason... He's the only one left and the only one whose pigeon we've got to figure. Yes, sir. Yes, Your Honor. But the reason the initial panel, Judge Seiler and Judge Kethledge and Judge Graham at that time, allowed tolling to take place is because the argument presented by Mr. Corley's counsel the first time around was we had to exhaust. We were required to exhaust. We were mandated to exhaust. This appears at pages 30 to 34 of the first appellate brief. So now you kind of have your cake and you eat it too where you're saying, well, for purposes of grabbing that tolling and making use of it and making my client's claim timely, I'm going to tell the panel we were required to exhaust. But now on this appeal, the second time around, because they missed the plan-required deadline to appeal the adverse determination in the administrative process, they're arguing we don't have to exhaust. I mean, it's an inconsistent use of the exhaustion argument. You can't have your cake and eat it too. Either you had to exhaust or you didn't have to exhaust. Well, you want us to decide this case on exhaustion grounds. Well, there's other arguments, Judge Merritt, and the arguments are based upon also the... That's what you're suggesting in this argument you're making, right? I'm suggesting that is one way to decide the case. There's other ways to decide the case on the merits as well, Judge Merritt. The language argument was actually decided by the first panel. I mean, that argument language about how you calculate someone's lump sum distribution was presented to the panel the first time around, and they asked pointed questions about how to go about calculating it. The plan language used to calculate it. And it's in their opinion and award where they basically say, look, we're going to look at the plan language, and if your plan links the lump sum benefit to the normal retirement benefit, age 65 benefit, there is no subsidy. If your plan, on the other hand, links it to the early retirement benefit, then the corresponding subsidy goes with that. And they made a finding that this plan language is linked to the normal retirement benefit, the age 65 benefit, and they made a finding that therefore... You mean our panel or the district court? The original panel, the Corley one. The determination they made was the determination that the plan administrator had made in the administrative process. They said that that determination, the interpretation of that language, was not arbitrary capricious, yes. Which is normally what we do in ERISA cases. Yes, Judge Boggs. So that if that, I presume the next step is, and that wasn't what they remanded on, so that portion is law of the case, and that's what your adversary is still trying to fight. And that basis for decision doesn't really have anything to do whether they missed the time for appeal. That's just the straight basis that the plan made a determination. It wasn't arbitrary and capricious. That's been decided. That's the end of the case. From the language standpoint, yes, Your Honor. But just not to leave it there, because there was an additional step they took. They said, look, not only is it not arbitrary and capricious, it's consistent with a Treasury regulation that tells you how to calculate a lump sum benefit where it is linked to the normal retirement benefit. So as a matter of law, they said that was a proper interpretation of the plan. So what did they do on the remand? They said, look, when this goes back to you, Judge Haber, and there's three questions we want you to answer, and they're entirely track the statute, which is 29 U.S.C. 1054G, the anti-cutback statute, and you first have to determine, is it an early retirement benefit? Is it a retirement-type subsidy? Or is it an optional form of benefit, the lump sum? Because they have important implications under the anti-cutback statute. The first two said you can't reduce them and you can't eliminate those types of benefits. If it's an optional form of benefit, the only prohibition under the statute is you can't eliminate it. And the words optional benefit are statutory words? Yes, sir. Okay, so we go back down to Judge Haber, and before I think he was a little bit leery about getting remanded reversed again, so before we oral argued again and he called us in down to Kentucky again, he set out a series of questions. He said, I want you to tell me, no fudging, no nothing, is this an optional form of benefit? And counsel for Corley said, yes, there is no dispute that this is an optional form of benefit. So if you take that and you follow it through, Judge Rogers, is there a violation of the statute? The 1998 plan amendment added the lump sum feature. Before that, there was no lump sum feature. You don't have to have a lump sum distribution feature in an ERISA pension plan. It's not required by the law. It's not required by the regulations. So if it's an optional plan, it is not, doesn't violate the anti-cutback provision, and hence the earlier determination by the benefits board, which the court said was fine in the first Corley case, is the law of the case. That's the bottom line. Yes, sir, but just so I'm clear on that, it's not just that it's an optional form of benefit. I mean, the statute says, Judge Merrick, you can't eliminate an optional form of benefit. That's the prohibition of the statute. That's the anti-cutback statute. And what Judge Haburn said, and what we argued to Judge Haburn, is the 1998 amendment did not only not eliminate anything, it added something. It added a new feature for participants of this plan and said, from here on out, you may make application for and take your distribution in a lump sum, where previously it did not exist. So it could not logically be a violation of the anti-cutback statute when you add something instead of eliminate it. And that was the analysis by Judge Haburn. I know I've made some arguments about whether the Duran decision, Judge Rogers, I think you were on that panel with Judge Keslitz the first time around, where the basic ruling was, look, if this is a strictly statutory thing, then we're not going to require ERISA beneficiaries to exhaust the administrative remedies, because really what the plan is doing is simply applying the plan text as it is. And since they're obligated to apply that plan text, the external, did this violate some ERISA provision, did the plan text itself violate some ERISA provision, doesn't need to be exhausted. But I think this context is a little different, because when we went back down on remand to Judge Haburn, there was a stipulation that this thing ought to be returned back to the Benefits Committee. There was a stipulation not only that it be returned to the Benefits Committee, there was a stipulation that it be returned to the Benefits Committee for what is called a full and fair review. Those are the exact words used in the judge's order, and they actually were words chosen by Mr. Corley's counsel. If you look at where those words come from, full and fair review, they come from the ERISA statute, 1133 of Title 29, and that is the appellate from a denial of claims through the administrative process. So I think it's much further than does this conflict with Duran. Did it go back to the Benefits Appellate Panel? By stipulation, Judge Barry. Not only, no one was ordered to go there. So you went back by stipulation and? And that stipulation said for a full and fair review, which is the statutory terminology used for appeals from an adverse decision by a Benefits Committee. You're still arguing the exhaustion argument right now? I am, Judge Rogers. I agree with you. I just wanted to understand. I thought you'd left it, but you're still on exhaustion. I do believe there's still an exhaustion requirement. Okay, I understand that, and it looks like if there is, they were past the time. Could the district court have ruled in your favor without resolving the exhaustion issue, or is it jurisdictional such that he was required to resolve the exhaustion issue first? In the abstract, Your Honor, I think. Oh, it's a legal question. Yes, sir. It's not really abstract. It applies to this case. I think Judge Haber had the authority to rule on the statutory issue that was remanded to him, which is does it violate the? I have a question. I'm asking if, let's say that you're right on both, but the judge is not convinced of the first one. Is it legitimate to not rule on the first one and go to the second one as long as he's ruling in your favor? That's what you do if it's an ordinary merits issue, but not if it's a jurisdictional issue that you have to decide first. Like standing or something like that. You're not saying that exhaustion is a jurisdictional issue that has to be resolved by the trial court before it gets to the merits if it could resolve the case in that direction without resolving it. Is that correct? I believe you're correct, Your Honor. Okay, thank you. I believe you're correct. Before my... Well, I've got plenty of time. So let me continue on that thread. Why I think exhaustion is different and why I think this case is different, I've already said. Well, I think you've addressed exhaustion at length. I wonder if you could address the... Is your merits argument weak, so you're really... No, not at all. Not at all. My merits argument, first of all, as I said before, Judge, it's already been addressed. If you look at the language used, they said, well, let's look at the plan language. What does this lump sum link itself to? And that is the normal retirement benefit. That's a done deal. I keep saying that. I'm sorry, the original panel, Judge Kethledge, Judge Seiler, and Judge Graham, they said that in their opinion. It's a reported opinion. It's on a page. Not only that, but if you read the plan language, I mean, now they've switched gears to something called a normal form from something that was previously argued as a normal retirement benefit. I mean, they previously argued to the panel that the early retirement subsidy is based on the normal retirement benefit. This is in their brief to the first panel. Now they're here arguing and saying it is not linked to the normal retirement benefit. It's linked to something called the normal form. The normal form, if you look at the plan language, has to do with payments in the form of a distribution as an annuity, like you asked, Judge Merritt, a payment monthly over a period of time that corresponds to the lifespan. It's called a subsidy. Well, the subsidy, I think they described it correctly when they said the subsidy. What it does is it plusses up your early retirement. Normally, if you take an annuity at an earlier age... Let me see if I understand. Your bottom line argument is that this is an optional form that was initiated in 1998, and therefore it is independent of the old subsidized form of retirement at age 65. It being an optional form, it's simply the lump sum that you have accrued. If I have... Maybe that's an unclear question. No, no. I think that is the argument, Judge, with the added that the statutory provision, which were down below, there was no violation when you add something instead of eliminate something. And that's kind of the bottom line argument here. That is the bottom line argument. There is one other aspect of the original panel's ruling, and this came up during the oral argument. And I know Judge Kethledge was specifically asking questions on this because of the way you morph a traditional defined benefit plan into a cash balance plan. You set up an opening account balance, similar to like a 401k balance. You take that person's value of that benefit and you put it hypothetically in an account and you add credits to it over the course of their time. Why do you think the first panel thought there might be an anti-cutback problem? Well, they remanded it because what they said, the grow-in factor, they interpreted that even though Mr. Corley was not age 55 and therefore was not eligible for an early retirement, and Judge Haber said, well, that ends the analysis altogether. That stops it since he wasn't even eligible. The panel said, well, you get to grow into it, even after your retirement, because once you make application if you're 55, then you get to grow into it. So what they said is because you misinterpreted the statute, we're sending it back down to you again for you to tackle the statute consistent with our opinion. And that's exactly what they did. But I want to get into what the panel said. I only got 16 seconds left, but they said when you go back down there again, be wary of double-dipping, because there's an argument here that they are, this is what is happening here, is they're double-dipping the subsidy. And at the administrative record at page 347, which is the district court's record 29, the counsel for Corley admitted that the subsidy was provided when they set up his initial account balance. We treated him as if he was age 65. There was no early retirement reduction when we set up the initial account balance. So he already got the subsidy when we set up the account balance. Thank you, counsel. I think your statement, I got plenty of time earlier might have been in there. I had four minutes at that time, Judge Boggs. Okay, I thank you for your time, and I thank the panel for its attention to the case. Counsel, he says the subsidy is included in the accrued cash balance. I call that a red herring, because at the end of the day, that has nothing to do with the ultimate calculation or the terms of the plan. Under the terms of the plan, they expressly require, and I don't remember which of the panel I asked in the question why you're not addressing the merits. Plan terms specifically state the lump sum has to be the actual equivalent of the normal form. It's that simple. Now, a couple of issues I would like to correct, statements that were made. That's Greek. I'm sorry? I mean, that's just, that's some language that the plan itself created, right? Absolutely. Normal form and so on. But that's not language that we use under ERISA normally. Actually, under ERISA, whether or not ERISA, all ERISA provides is the minimum requirement. ERISA does not require an employer to create a pension. It sets a minimum standards in any plan as the Supreme Court, McCutcheons has repeatedly said the contractual terms control. A couple of statements that were made that I do want to correct for the record. A statement was made that the prior plan did not include a lump sum. That is in error. At ALERIS 11992619 in the code, in the code, I'm sorry, in the record, we have an optional lump sum distribution on the prior plan. It had a cap of $20,000. The only thing the amendment did with respect to the lump sum was remove that cap. A couple of comments were made about what I argued before the panel the first time. And rest assured, I did not argue and do not argue that the normal form of benefit has anything to do here. We're talking about the actual equivalent, not accrued benefit. They are separate and distinct. And if I look at the reply brief, I'm starting on page 7 in case 9-5139. I'm not quite sure how to get that into the record. In my reply brief on page 15, I specifically addressed the normal form issue before the prior panel. With respect to the court order, I do want to come back to some questions that Judge Rogers, you asked, because I don't think I gave you a sufficient answer. I want to come back to that if I could. When we look at section 3, Roman numeral 3, page 5 of the prior panel's order, we start under paragraph A. Again, the threshold issue, as counsel conceded, was we were before the panel on whether or not you could age into the benefit. It was a threshold issue. As an ancillary issue, because I didn't raise it, it was raised by the defendant, they wanted to argue about the formulas that should be applied and that sort of thing. And what we talk about or what the court was addressing in those first two paragraphs is what's called an accrued benefit. What does the plan define as accrued benefit? What do the Internal Revenue Regulations talk about accrued benefits? Accrued benefits, not actual equivalent. And when we go down to, again, trying to reconcile what our directive was on remand. On remand, it was Mr. Corley and the folks that are in a similar situation, they are entitled to age into it after the 98th Amendment. Now we've got to do the calculations. The panel specifically said, and other parties explained to us the calculations. The plan was supposed to... We can read the opinion council. I appreciate it. I'm sorry, my time. Thank you for the time. The case will be submitted. The clerk will call the meeting.